**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

WIRELESS INK CORPORATION,

               Plaintiff,

v.

FACEBOOK, INC. and GOOGLE, INC.,

               Defendants.

**No. 10 Civ. 1841 (PKC)**

**ECF Case**

---

**PLAINTIFF WIRELESS INK CORPORATION'S**
**MEMORANDUM OF LAW IN**
**OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**
**AND**
**PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**
**ON DEFENDANTS' COUNTERCLAIM**
**FOR A DECLARATORY JUDGMENT AND  DEFENSE OF INVALIDITY**

TABLE OF CONTENTS

I.   Introduction ............................................................................................................... 1

II.  Procedural Background ............................................................................................. 3

III. The Standard for Pleading a Patent Complaint ...................................................... 4

IV. Plaintiff's Claims For Patent Infringement Are Compulsory
    Counterclaims ............................................................................................................ 7

V.  The Defendants' Substantive Arguments Have No Merit ..................................... 8

        A. Defendants' Rely on Facts Outside Plaintiff's Pleading, Which in Any Case Are
           Not Relevant to Infringement .................................................................... 9

        1. Only the Plaintiff's Facts Pleaded in the Second Amended Complaint Should
           be Accepted as True for Purposes of Defendants' Motion to Dismiss ................ 9

        2. The Additional "Facts" Pleaded by The Defendants Are Not Relevant ............. 11

        B. Defendants' Remaining Arguments Are Simply an Attempt to Resurrect Claims
           Constructions Lost at *Markman* ................................................................. 12

        1. "permitting a user to … select activation of particular ones of a plurality of
           predetermined mobile information channels" ..................................................... 12

        2. generating a mobile web site that has "activatable links corresponding to
           respective ones of the predetermined selectable mobile information channels
           that have been activated by the user" ................................................................ 18

        C. Plaintiff Has Adequately Pleaded Direct Infringement, Thus Defendants' Motion
           to Dismiss on the Pleadings Plaintiff's Claim For Indirect Infringement Fails ........ 22

VI. Plaintiff's Cross-Motion for Judgment on the Pleadings on Defendants' Counterclaims For
    Declaratory Judgment and Defense of Invalidity ................................................... 22

        A. The Patent and Trademark Office Has Soundly Rejected Defendants' Invalidity
           Arguments .................................................................................................. 22

        B. Defendants Have Not Pleaded A Plausible Claim For Patent Invaldity .................. 24

VII. Conclusion ............................................................................................................... 25

ii

# TABLE OF AUTHORITIES

**Cases**

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350 (Fed. Cir. 1984) ................................. 25

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009). ................................................................ 5, 24

*Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620 (S.D.N.Y. 2008) .................................... 24

*Bailey v. Pataki et al.*, No. 08 Civ. 8563 (JSR), 2010 WL 234995 (S.D.N.Y. Jan. 19, 2010) ......................... 9

*Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, No. 2009-1053, 2009-1111,
   2010 U.S. App. LEXIS 15609 (Fed. Cir. July 29, 2010) ............................................. 16, 17, 18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ passim

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .......................................... 8, 9, 12

*Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS, 2009 WL 2972374
   (N.D. Cal. Sept. 14, 2009) ........................................................................... 6

*Eolas Tecnologies, Inc. v. Adobe Systems, Inc.*, No. 6:090CV-446, 2010 WL 2026627
   (E.D. Tex. May 6, 2010) .............................................................................. 6

*Gaus v. Conair Corp.*, 363 F.3d 1284 (Fed. Cir. 2004) ................................................... 16

*Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495 (Fed. Cir. 1997) ...................................... 11, 19

*Gillette Co. v. Energizer Holdings Inc.*, 405 F.3d 1367 (Fed. Cir. 2005) ................................ 11

*Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364 (Fed. Cir. 2003) ............................... passim

*Juster Assocs. v. Rutland*, 901 F.2d 266 (2d Cir. 1990) .................................................. 9

*Management Assistance, Inc. v. Edelman*, 584 F. Supp. 1016 (S.D.N.Y. 1984) ............................. 24

*Mark IV Industries Corp. v. TransCore, L.P.*, No. 09-418 GMS, 2009 WL 4828661
   (D. Del. Dec. 2, 2009) ............................................................................... 6

*Markman v. Westview Instr.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), aff'd, 517 U.S. 370 (1996) ........ 11

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007) ......................................... 5, 6

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) ......................................................... 10, 11

*Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935 (Fed. Cir. 2003) ............... 7, 8

*Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046 (N.D. Cal. 2004) ................................. 25

*Sharafabadi v. University of Idaho*, No. C09-1043JLR, 2009 WL 4432367
   (W.D. Wash. Nov. 27, 2009) ........................................................................................6

*Shechter v. Comptroller of New York*, 79 F.3d 265 (2d Cir. 1996) ...............................24

*Sikes Cookers & Grill, Inc. v. Vidalia Outdoor Products, Inc.*, No. 1:08-CV-0750-JOF, 2009 WL 427227
   (N.D. Ga. Feb. 19, 2009) ............................................................................................6

*Tune Hunter, Inc. v. Samsung Telecommunications America, LLC*, No. 2:09-cv-148-TJW, 2010 WL
   1409245 (E.D. Tex. April 1, 2010) .............................................................................6

*Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295 (Fed. Cir. 2007)...................................14, 17

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) .......................................14, 17

*Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795 (Fed. Cir. 1999).........1, 7, 8

*Xpoint Technologies, Inc. v. Microsoft Corp.*, Civ. No. 09-628-SLR, 2010 WL 3187025,
   (D. Del. Aug. 12, 2010) ..............................................................................................6

## Rules

Fed. R. Civ. P. 8(a)(2) .......................................................................................................4

Fed. R. Civ. P. 13(a) .........................................................................................................7

Fed. R. Civ. P. 84 .............................................................................................................5

## Treatises

6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
   Federal Practice and Procedure § 1410 (2d ed. 1990)................................................7

**PLAINTIFF WIRELESS INK CORPORATION'S
MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
AND
PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS
ON DEFENDANTS' COUNTERCLAIM
<u>FOR A DECLARATORY JUDGMENT AND  DEFENSE OF INVALIDITY</u>**

Pursuant to the Court's Order of November 24, 2010, Plaintiff Wireless Ink Corporation ("Wireless Ink") hereby files and serves this Memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings, which pursuant to the Court's Order of January 27, 2011, is also in support of Plaintiff's Cross-Motion for Judgment of the Pleadings on Defendants' Counterclaim for a Declaratory Judgment and Defense of Invalidity.

**I.      Introduction**

Prior to any substantive discovery, the Defendants seek to dismiss Plaintiff's detailed Second Amended Complaint on the pleadings.  However, the Plaintiff has more than met any factual pleading standard that may be applied to the claims in the Second Amended Complaint, which stands in sharp contrast to the Defendants' complete failure to plead any allegations in support of their counterclaim and defense of invalidity.

Plaintiff's claims for patent infringement are compulsory counterclaims to the Defendants' declaratory judgment claim for noninfringement.  Even if the Defendants could somehow prevail upon the Court to dismiss the Plaintiff's claims, the Plaintiff would be forced to seek leave to file an amended answer asserting the compulsory counterclaims for patent infringement.  *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 802 (Fed. Cir. 1999) ("[W]hen the same patent is at issue in an action for declaration of noninfringement, a counterclaim for patent infringement is compulsory and if not made is deemed waived.").

However, the Court will not be forced to waste its time on such procedural nonsense, since the Defendants' motion to dismiss on the pleadings is without merit**.**  Many of the Defendants' arguments rest on facts not pleaded by the Plaintiff, and which should not be taken as true for purposes of a motion to dismiss.  Moreover, the new arguments raised by Defendants claiming that Plaintiff must plead that the allegedly infringing features must be directed solely to the mobile web site violate basic principles of patent law on claims construction.  The remainder of the Defendants' arguments attempt to resurrect arguments already lost during claims construction.  Finally, since Plaintiff adequately pleads direct infringement, the Defendants' arguments to dismiss Plaintiff's claims for indirect infringement must fail.

Therefore, for all the above reasons, Defendants' motion to dismiss on the pleadings should be denied.

In addition, this Memorandum is filed in support of Plaintiff Wireless Ink's cross-motion for judgment on the pleadings regarding Defendants' counterclaim for a declaratory judgment and defense of patent invalidity.  Specifically, the Patent and Trademark Office has rejected all of Defendants' prior art arguments in a continuation patent with similar claims.  Plaintiff has submitted all the prior art cited by Defendants to date to the PTO and the PTO found the claims allowable.

Defendants have completely failed to plead a plausible claim for patent invalidity.  Unlike the detailed Second Amended Complaint filed by Plaintiff, Defendants' counterclaim and defense of invalidity are nothing more than conclusory assertions and statements, with no facts plead to support them.  Plaintiff respectfully requests that this counterclaim and defense be dismissed with prejudice.

## II.      Procedural Background

This motion by the Defendants is nothing more than the latest attempt by Defendants to delay the adjudication of this case on the merits.  First, the Defendants complained about the lack of factual allegations in the original complaint.  In an attempt to alleviate these concerns and to move the case forward, the Plaintiff agreed to file a First Amended Complaint, which contained far more detail than required under the Federal Rules of Civil Procedure.

Defendants then complained in essence that Plaintiff had provided too much detail and argued that the First Amended Complaint should be dismissed based on various claim constructions proposed by Defendants.  Instead of allowing the Defendants' motion, the Court stayed discovery and proceeded with claim construction.  During the claims construction hearing, however, the Court refused to adopt the Defendants' proposed constructions of various terms.

Undeterred by their failure to convince the Court to adopt their proposed claims constructions, which were rejected by the Court in portions of the transcript the Defendants misleadingly fail to cite, the Defendants again proposed filing a motion to dismiss -- this time claiming that not all elements were pleaded according to the Court's claims construction.  In an effort to avoid further delay, the Plaintiff again amended its pleadings to conform its detailed factual allegations to the Court's claims constructions.

Defendants have now answered the Second Amended Complaint, filed counterclaims seeking both a declaration of noninfringement and invalidity, and briefed and argued detailed claims construction positions, all of which point to the sufficiency of Plaintiff's detailed Second Amended Complaint.  As argued further below, dismissal of Plaintiff's infringement claims would

be improper since Defendants seek a declaratory judgment of noninfringement, thereby making Plaintiff's claims for patent infringement compulsory counterclaims.

Moreover, Defendants' motion to dismiss is without merit.  The Defendants' arguments for dismissal are largely based on claims constructions that were already implicitly or <u>explicitly</u> rejected by this Court.  In addition, Defendants now spuriously argue that the features alleged to infringe must be directed <u>solely</u> towards a mobile web site -- in violation of basic principles of patent law.  Any additional features and elements not directed to the elements of the claims have no relevance either to the facts pleaded in the Second Amended Complaint or to the Plaintiff's claims for patent infringement.

The detailed factual allegation of Plantiff's claims stand in sharp contrast to the Defendants' conclusory allegations of patent invalidity.  Those allegations are not supported by any facts, much less facts that would support a plausible claim or defense that any claim of the patent-in-suit is invalid.  *See* Plaintiff's January 21, 2011 Ltr. to the Court, a true and correct copy of which is attached to the Declaration of Jeremy Pitcock in Support of Plaintiff's Opposition Brief to Defendants' Motion for Judgment of the Pleadings ("Pitcock Decl.") as Exh. A.  In contrast to the Plaintiff, the Defendants have not offered to amend their pleadings to set forth a plausible claim or defense that the patent is invalid.  *See* Defendants' January 24, 2011 Ltr. to the Court, a true and correct copy of which is attached to the Pitcock Decl. as Exh. B.

### III.    The Standard for Pleading a Patent Complaint

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint attacked by a motion to dismiss does not need detailed factual allegations, but merely enough facts to state a *plausible* claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) ("[W]e do not require heightened fact pleading

of specifics, but only enough facts to state a claim to relief that is plausible on its face.").
"Determining whether the complaint states a plausible claim for relief will . . . be a context-specific
task that requires the reviewing court to draw on its judicial experience and common sense."
*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

Fed. R. Civ. P. 84 expressly states that the pleadings in the Appendix of Forms "are
sufficient under the rules and are intended to indicate the simplicity and brevity of statement which
the rules contemplate."  Rule 84 cannot be altered by judicial interpretation. *See Twombly*, 550 U.S.
at 569 n. 14.  Form 18 in the Appendix of Forms (for patent infringement) requires a simple four
paragraph statement in order to adequately state a claim for patent infringement.[1]

Thus, in *McZeal v. Sprint Nextel Corp*., 501 F.3d 1354 (Fed. Cir. 2007), the Federal Circuit
held that a plaintiff has sufficiently pleaded a patent-infringement claim where it identified the
asserted patent, identified a specific accused product and included a general reference to a "line of
[wireless VoIP] products," and alleged "enough detail to allow the defendants to answer." *Id*. at
1357.  After quoting from Form 18 (Form 16 at that time), the panel explained that "a plaintiff in a
patent infringement suit is not required to specifically include each element of the claims of the
asserted patent." *Id*.  Indeed, the patentee, at the pleading stage, need not even fully know or
understand how an accused product works to plead a sufficient claim of infringement.  Instead, the

---

[1]     Form 18 provides a sample complaint for patent infringement that recites: "1. (Statement of
Jurisdiction -- See Form 7.) 2.  On date _____, United States Letters Patent No. _____ were
issued to the plaintiff for an invention in an electric motor. The plaintiff owned the patent
throughout the period of the defendant's infringing acts and still owns the patent. 3. The defendant
has infringed and is still infringing the Letters Patent by making, selling, and using electric motors
that embody the patented invention, and the defendant will continue to do so unless enjoined by this
court. 4. The plaintiff has complied with the statutory requirement of placing a notice of the Letters
Patent on all electric motors it manufactures and sells and has given the defendant written notice of
the infringement. Therefore, the plaintiff demands: (a) a preliminary and final injunction against the
continuing infringement; (b) an accounting for damages; and (c) interest and costs." Federal Rules
of Civil Procedure, Appendix of Forms, Form 18 (2007).

details of how the accused product operates and how that relates to the infringement claim, is left for discovery. *Id.* at 1358 (emphasis added).

Here, where the Defendants have answered the 79-paragraph, 26-page, factually-detailed Second Amended Complaint, filed counterclaims seeking both a declaration of noninfringement and invalidity, and briefed and argued claims construction positions, there would seem to be little doubt that Plaintiff's Second Amended Complaint was sufficient to state a claim for relief that was plausible enough to withstand a motion to dismiss. *See id.* at 1354 (a complaint sufficient for Defendants to merely <u>answer</u> is sufficient).[2] Thus, Defendants' motion to dismiss should be denied.

---

[2]      *See also Xpoint Technologies, Inc. v. Microsoft Corp.*, Civ. No. 09-628-SLR, 2010 WL 3187025, at *2-3 (D. Del. Aug. 12, 2010) (acknowledging that during the pleading stage a plaintiff ordinarily only has access to public information and thus a "plaintiff is not required to specifically include each element of the asserted patent's claims or even identify which claims it is asserting; nor is it required to describe how the allegedly infringing products work."); *Mark IV Industries Corp. v. TransCore*, L.P., No. 09-418 GMS, 2009 WL 4828661, at *3-4 (D. Del. Dec. 2, 2009) (rejecting TransCore's argument that a patent infringement plaintiff must plead specific claims of the patent and describe how the product work, finding instead that all that is necessary are the elements of Form 18 post-*Iqbal*; *Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531 RS, 2009 WL 2972374, at *2 (N.D. Cal. Sept. 14, 2009) (a court must accept as sufficient any pleading made in conformance with the forms); *Eolas Tecnologies, Inc. v. Adobe Systems, Inc.*, No. 6:090CV-446, 2010 WL 2026627, at *2-3 (E.D. Tex. May 6, 2010) (finding that even after *Twombly* and *Iqbal*, "a patent complaint that complies with Form 18 will suffice to state a claim that is plausible on its face" because to hold otherwise would render Federal Rule of Civil Procedure 84 invalid); *Tune Hunter, Inc. v. Samsung Telecommunications America, LLC*, No. 2:09-cv-148-TJW, 2010 WL 1409245, *3-4 (E.D. Tex. April 1, 2010) ("[I]t is the discovery phase of litigation, not pleading, that the parties are required to conscientiously develop facts that support the various theories of infringement, or non-infringement as the case may be."); *Sikes Cookers & Grill, Inc. v. Vidalia Outdoor Products, Inc.*, No. 1:08-CV-0750-JOF, 2009 WL 427227, at *2-3 (N.D. Ga. Feb. 19, 2009) (there is no heightened pleading standard for patent cases; if a complaint follows the requirements of the forms, it is sufficient to survive a motion to dismiss); *Sharafabadi v. University of Idaho*, No. C09-1043JLR, 2009 WL 4432367, at *1 (W.D. Wash. Nov. 27, 2009) (finding that a complaint that "provided the information contemplated by Form 18 and has advised PNW of his allegation that PNW is using the '186 Patent in the course of its business" was sufficient, even though the plaintiff had not "thoroughly developed his allegations.").[3]      While Plaintiff Wireless Ink has attached excerpts of the relevant pages from the Prosecution History, the page numbers refer to the page numbered certified prosecution history that was filed by the Defendants in connection with claim construction briefing. *See* Exhibit B to the Declaration of Aaron Chase filed on September 17, 2010, D.E. 38.

**IV.     Plaintiff's Claims For Patent Infringement Are Compulsory Counterclaims**

The Defendants have both asserted a counterclaim for a declaratory judgment for noninfringement.  Therefore, Plaintiff's claims for patent infringement are compulsory counterclaims, and even if dismissed, it would be an abuse of discretion for this Court to deny Plaintiff the ability to assert such compulsory claims in this litigation.

In *Vivid Technologies*, the manufacturer, Vivid Technologies, brought a declaratory judgment action seeking a declaration that its x-ray security device did not infringe a patent owned by American Science & Engineering, Inc. (AS & E) or that the AS & E patent was invalid.  The district court denied AS & E's motion for leave to file a counterclaim.  Finding an abuse of discretion, the Federal Circuit reversed and required entry of the counterclaim on remand.  The Federal Circuit based its ruling on the compulsory nature of AS & E's claim.  The Federal Circuit noted that "[a] counterclaim for patent infringement, in an action for declaration of noninfringement of the same patent, readily meets all [of the] four [tests]" identified by Professor Wright and used by the various circuit courts, any one of which renders a counterclaim compulsory.  *Vivid Techs*., 200 F.3d at 801 (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1410 (2d ed. 1990)).

In sum, Rule 13(a) makes an infringement counterclaim to a declaratory judgment action for noninfringement compulsory.  *Polymer Industrial Products Co. v. Bridgestone/Firestone, Inc*., 347 F.3d 935, 938 (Fed. Cir. 2003).  Although not explicit in the text of Rule 13(a), a party that does not assert its compulsory counterclaim in the first proceeding has waived its right to bring the counterclaim and is forever barred from asserting that claim in future litigation.  *Id.*  (internal citations omitted). Failure to allow Plaintiff to pursue a compulsory counterclaim for infringement would be an abuse of discretion. *See id.; Vivid Tech*., 200 F.3d at 801.

Thus, due to the Defendants' counterclaims of noninfringement, Plaintiff's claims for infringement are compulsory and it would be an abuse of discretion to not allow Plaintiff to pursue such claims in the same litigation.

## V.     The Defendants' Substantive Arguments Have No Merit

When considering a motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences from these allegations in the light most favorable to the plaintiff. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citing *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001)).

Defendants argue that Plaintiff does not adequately plead infringement of two claim limitations:

• "permitting a user to . . . select activation of particular ones of a plurality of predetermined mobile information channels"; and

• generating a mobile web site that has "activatable links corresponding to respective ones of the predetermined selectable mobile information channels that have been activated by the user."  Defendants' Brief at 1 and 9-10.

However, contrary to the Defendants' assertions, and as explained more fully below, the Plaintiff pleads every part of these limitations in the Second Amended Complaint, including detailed facts to support its allegations of infringement of these two limitations as construed by the Court.  *See* Dkt. No. 54, ¶¶ 12-28 (relating to Facebook for Claim 1) and ¶¶ 29-43 (relating to Google for Claim 1).

Defendants' arguments rest on claims constructions positions that were implicitly, and often explicitly, rejected by the Court. Obviously, such rejected claims construction positions cannot properly form the basis of a motion to dismiss where every inference should be resolved in favor of

the Plaintiff. *Chambers*, 282 F.3d at 152 (2d Cir. 2002).  Moreover, to the extent that the Court has

not yet addressed Defendants' claims construction positions, all inferences should be resolved in the

Plaintiff's favor on a motion to dismiss on the pleadings, particularly when the Defendants have

already had a chance to raise any dispositive claims construction issues with the Court. *Id.*

In addition, under Rule 12(c), a party is entitled to judgment on the pleadings "only if it has

established 'that no material issue of fact remains to be resolved and that [it] is entitled to judgment

as a matter of law.'" *Bailey v. Pataki et al.*, No. 08 Civ. 8563 (JSR), 2010 WL 234995, at *1

(S.D.N.Y. Jan. 19, 2010) (J. Rakoff) (citing *Juster Assocs. v. Rutland*, 901 F.2d 266, 269 (2d Cir.

1990)).  Defendants try to have it both ways.  For the most part, the Defendants refused to admit the

allegations in the Second Amended Complaint, raising issues of disputed facts.  *See* Dkt. Nos. 57

and 58, ¶¶ 10-76.  Yet, the Defendants also now take the contrary position that there is no dispute

regarding the operation of their web sites, while simultaneously presenting new "facts" not

contained in the Plaintiff's Second Amended Complaint.  Defendants' Brief at 6.  This is entirely

improper on a motion to dismiss on the pleadings, as detailed below.

### A. Defendants' Rely On Facts Outside Plaintiff's Pleading, Which in Any Case Are Not Relevant to Infringement

#### 1. Only the Plaintiff's Facts Pleaded in the Second Amended Complaint Should Be Accepted As True for Purposes of Defendants' Motion to Dismiss

Many of the "facts" raised by Defendants in support of its motion were not pleaded by the

Plaintiff in the Second Amended Complaint.  Relying on such "facts," the Defendants argue that

these various features (not pleaded by Plaintiff) somehow obviate their infringement. For example,

the Defendants argue that because their content management web sites allegedly generate both non-

mobile and mobile web sites and that the various features for making information visible work for

both non-mobile as well as mobile web sites, the accused web sites do not infringe.  *See*

Defendants' Brief at 8 (claiming that Court's construction requires "the user to select mobile information channels in order to make them visible '<u>at the mobile web site</u>'"); *Id.* at 9 (claiming that the settings relate to content and "to the availability of such content universally on the accused service"; the Court's construction requires selection of material "that is specific to the accused mobile web sites"; "Plaintiff alleges that a user may determine what content is available on any web site, mobile or not."); *Id.* at 15 (claiming that Plaintiff's Second Amended Complaint "relies on general customization setting of the Defendants' web sites that, at best, affect whether certain potentially sensitive information (i.e., content) is visible to anyone on any web site and that have nothing to do with generating specific mobile web sites, let alone choosing which 'mobile information channels' will be visible on them."); *Id.* at 16 (making claims regarding the "generic settings"); *Id.* at 17 ("Plaintiff does not identify, nor can it, any privacy setting allowing a user to toggle between "Mobile" or "Non-Mobile Only" for any type of information" and that "Plaintiff does not even allege that these settings have any effect on whether the channels are visible <u>at a mobile web site</u>."; *Id.* at 18 (claiming that the "settings control who can what information (content) at any web site, whether mobile or non-mobile").

Of course, the Defendants did not argue that the claim limitations needed to be read restrictively during claims construction. Nor did the Plaintiff plead any of these "facts" in the Second Amended Complaint.  Only the facts actually pleaded by the Plaintiff are accepted as true for purposes of the Defendants' motion.  *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  Thus, Defendants "facts" are not properly be considered on a motion to dismiss on the pleadings.

## 2.   The Additional "Facts" Pleaded By The Defendants Are Not Relevant

However, even if the Court did consider these purported facts pertaining to such additional features to be true for purposes of the Defendants' motion to dismiss, according to well-established principles of patent law, none of these additional features supposedly available on the Defendants' web sites are relevant to Plaintiff's claims for infringement. As noted by the Defendants, all patent infringement analyses consist of two steps: (1) determining the meaning and scope of the claim as a matter of law, and; (2) comparing the properly construed claims to the accused product or service. *Markman v. Westview Instr.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), aff'd, 517 U.S. 370 (1996); Defendants' Brief at 6.

Claim 1 uses the word "comprising" to delineate the required method steps.  Defendants' Brief at 3. The transitional term "comprising" is inclusive or open-ended and does not exclude additional, unrecited elements or method steps. *See, e.g., Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1368 (Fed. Cir. 2003) ("The transition 'comprising' in a method claim indicates that the claim is open-ended and allows for additional steps."); *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("Comprising" is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.).

Thus, in *Gillette Co. v. Energizer Holdings Inc.*, 405 F.3d 1367, 1371-73, 74 USPQ2d 1586, 1589-91 (Fed. Cir. 2005), the court held that a claim to "a safety razor blade unit comprising a guard, a cap, and a group of first, second, and third blades" encompasses razors with more than three blades because the transitional phrase "comprising" in the preamble and the phrase "group of" are presumptively open-ended. "The word 'comprising' transitioning from the preamble to the body signals that the entire claim is presumptively open-ended." *Id.*

Indeed, "comprising" is used again to describe both the content management web site and the mobile web site in claim 1.  '983 Patent, 18:22-48.  Since "comprising" is used prior to the recited steps (and web sites) of the asserted method claims, it does not matter for purposes of determining infringement that the accused infringing web sites also perform other steps, such as generating or managing content on "non-mobile web sites." As long as the accused infringing web sites perform the recited method steps, as plead in detail in the Second Amended Complaint, the addition of steps or features is not relevant.  Defendants' argument that these additional features preclude a finding of infringement violates essential rules for claim interpretation, and particularly in a motion to dismiss on the pleadings where every inference should be resolved in favor of the Plaintiff, should be rejected. *Chambers*, 282 F.3d at 152 (2d Cir. 2002).

### B.  Defendants' Remaining Arguments Are Simply An Attempt To Resurrect Claims Constructions Lost At *Markman*

#### 1.  "permitting a user to . . . select activation of particular ones of a plurality of predetermined mobile information channels"

 Claim 1 is a method for "managing information content."  Defendants' Brief at 3. Claim 1 specifically requires a "content management web site" which the Court construed as  "a web site that allows a user without programming to author content, i.e., write or create material and to select activation of particular mobile information channels." *Id.* (citing Tr. at 60:15-18, *see* excerpts from the Claim Construction Hearing Transcript held on October 21, 2010, a true and correct highlighted copy of which is attached to the Pitcock Decl. as Exh. C (hereinafter referred to as "Tr.")).  The Court construed a "mobile information channel" as "a virtual location at the content management site at which user-authored content may be added for transmission to the mobile web site."  Pitcock Decl., Exh. C, Tr. at 22:15-18.

Thus, "mobile *information* channels," according to the Court's claims construction, need only contain content or information.  Indeed, the Court's construction requires that user-authored *content* may be added or placed into a mobile information channel.  Defendants' Brief at 4.  The specification of the patent explains that mobile information channels integrate content and make it accessible at a mobile web site:

> The above-noted M-Channels will now be described in greater detail.  As mentioned previously, the M-channels are utilized at the content management site of the illustrative embodiment to facilitate the generation of mobile sites *and the management of associated content*.  More specifically, the M-channels allow unsophisticated users to easily and efficiently *author message data or other types of information content to be made accessible* via a … mobile site or portion thereof generated or otherwise managed in the system … *The particular configuration of the M-channels, and the content integration options associated therewith, may vary from implementation to implementation* depending on factors such as the particular wireless networking functionalities available in the system.

*See* '983 Patent at 7:46-65 (emphasis added), a true and correct copy of which is attached to the Pitcock Decl. as Exh. D (hereinafter referred to as "the '983 Patent"); *see also* '983 Prosecution History at p. 317,[3] a true and correct copy of excerpts from which are attached to the Pitcock Decl. as Exh. E ("The user can enter *information* into one or more of the mobile information channels, as illustrated, for instance, in FIGS. 9 and 10, and described at page 19, lines 10-26, of the specification.") (emphasis added).

A channel is "visible" when people other than the user activating the channel can see the content.  The specification explicitly discloses that activating a particular mobile information channel makes content visible. *See, e.g.*, the '983 Patent, Figures 25d (provided on the left) and 25e (provided on the right):

---

[3]    While Plaintiff Wireless Ink has attached excerpts of the relevant pages from the Prosecution History, the page numbers refer to the page numbered certified prosecution history that was filed by the Defendants in connection with claim construction briefing.  *See* Exhibit B to the Declaration of Aaron Chase filed on September 17, 2010, D.E. 38.

 

The specification also repeatedly refers to content in mobile information channels with specific references to whether or not <u>content</u> has been made visible. *See, e.g.*, the '983 Patent, Fig. 9A, reproduced below.



Exclusion of these preferred embodiments of mobile information channels from the specification would be improper. *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1305 (Fed. Cir. 2007) (rejecting proposed claim interpretation that would exclude disclosed examples in the specification); *Invitrogen*, 327 F.3d at 1369 (finding district court's claim construction erroneously excluded an embodiment described in an example in the specification, where the prosecution history showed no such disavowal of claim scope); *see also Vitronics Corp.*

*v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (a claim interpretation that excludes a preferred embodiment is "rarely, if ever, correct"). That activation of a mobile information channel makes information (or content) visible was also explicitly confirmed when the claims were discussed in the prosecution history:

> It is believed that the amendments made herein clearly distinguish the present invention from the arrangements disclosed in Khan. Those arrangements do not involve a user *selecting activation* of particular predetermined mobile information channels *into which the user may enter information*, nor do they involve generating *from such entered information a mobile web site* of the type recited in the claims.

Pitcock Decl., Exh. E at p. 317 (emphasis added).

Contrary to the Defendants' self-serving statements about what the Court "clearly" meant by its construction of mobile information channels on page 12 of their brief, the Court specifically declined to adopt the Defendants' "spin" on this term:

```
        [Attorney for Facebook]:    I think the only
21   question I would ask, I think it's clear from your Honor's
22   definition, but I want to make sure that everyone understands
23   that the channel is separate from the content that's being
24   added to it.
25           THE COURT:  Look, look, look, claim construction is
 1   construing words.  I am not going to spin anything.  I spin
 2   nothing one way or the other.  I am taking the word mobile
 3   information channels, and I am doing my best to construe those
 4   words.
 5   [Attorney for Facebook]:  And I completely understand, your Honor,
 6   and I think you've done that.  I would just ask that you add to
 7   the construction the negative, you know, what it is not.  It is
 8   not the content that is added to it.  There are a number of
 9   cases where the issue has been raised to the judge at the time
10   of claim construction where negative further definitions have
11   been added to prevent the issue from continuing to happen in
12   the future.  And that is in the Becton, Dickinson v. Tyco
13   Healthcare case.
14           THE COURT:  I decline to do that.  I am going to
15   construe the term, and I do construe the term "mobile
16   information channels" to mean "a virtual location at the
17   content management site at which user-author content may be
18   added for transmission to the mobile web site."
```

Pitcock Decl., Exh. C, Tr. at 21:20-22:18.

Defendants' reliance on the *Becton* case is misplaced.  *See Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, No. 2009-1053, 2009-1111, 2010 U.S. App. LEXIS 15609, at *12-13 (Fed. Cir. July 29, 2010) (quoting *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004)) ("Where a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention.").

Plaintiff does not allege that the various mobile information channels are the same as "user-authored content."  Indeed, user-authored content does not even have to be made part of the content in a mobile information channel, as the Court's construction requires only that the mobile information channel have virtual locations where such user-authored content *may be* saved or placed in the channel.  Defendants' Brief at 4.

Moreover, the specification discloses that a mobile information channel may contain content other than user-authored content (as implicitly construed by the Court). *See* Pitcock Decl., Exh. C, Tr. at 18:2-4 (implicitly defining "authoring" as "writing or creating"). For example, adding selectable or uploadable media and other types of content to a mobile information channel is also specifically described in the patent specification.  *See* '983 Patent, col. 16:34-43 ("Selectable or uploadable media may include, for example, an XML/RSS feed, a database entry, a syndication item, a document, a video, a photo, a graphic, a music file, etc. Distribution, delivery and service options may include, for example, a distribution list based on group(s) or individual(s), SMS delivery, MMS delivery, email delivery, WAP availability, syndication availability, particular content to be combined or otherwise integrated with the content item upon delivery, etc.").  As noted above, any construction of mobile information channels which did not cover the preferred embodiments would violate well-established principles of claims construction, as well as common sense. *Verizon*, 503 F.3d at 1305 (rejecting proposed claim interpretation that would exclude

disclosed examples in the specification); *Invitrogen*, 327 F.3d at 1369 (finding district court's claim construction erroneously excluded an embodiment described in an example in the specification, where the prosecution history showed no such disavowal of claim scope); *Vitronics*, 90 F.3d at 1583 (a claim interpretation that excludes a preferred embodiment is "rarely, if ever, correct").

Thus, the mobile information channel may contain content other than user-authored content, and is thus different and distinguishable from user-authored content, which need not even be part of the content of a mobile information channel. Accordingly, Plaintiff's allegations do not in any way violate the principles of *Becton*.

The Defendants also attempt to make the argument that authoring content must include the act of making the content visible. Defendants' Brief at 12-13.  This argument makes no sense, since the acts of writing or creating content are, in fact, different from the many acts described in the Second Amended Complaint for making content visible, and thus do not violate the teachings of *Becton* cited above.  Rather, *Becton* would support finding that add user-authored content to a channel and selecting activation of a channel are different acts, in accordance with Plaintiff's allegations.  *Becton,* 2010 U.S. App. LEXIS 15609 at *12-13.

Of course, while trying to rely upon *Becton* for their own claims constructions, the Defendants themselves then violate the principle of this same case, arguing that the "activatable links" are part of the mobile information channel, and thus need to be made visible by the user. However, the "activatable links" are <u>not</u> the mobile information channels.  As Defendants set forth in their brief, this Court construed "activatable links" as "links that users of a mobile web site may employ to access a given mobile information channel."  Defendants' Brief at 4.  "Where a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention."  *Becton,* 2010 U.S. App. LEXIS 15609 at *12-

13 (internal quotations ommitted). Indeed, "activatable links" were not part of any parties' proposed construction of "mobile information channels." Thus, there is no requirement that a user make such "links" visible, only the ability to select activation of mobile information channels and thus make content visible.

The specification nowhere describes making links "visible." Instead, as explained in more detail below, the prosecution history explicitly describes embodiments where links exist at the mobile web site for channels that have not been activated. Thus, the Defendants' arguments that Plaintiff has not pleaded a plausible case for infringement of this claim limitation should be rejected.

> **2.  generating a mobile web site that has "activatable links corresponding to respective ones of the predetermined selectable mobile information channels that have been activated by the user."**

There is also nothing in the Court's claim construction that requires that <u>only</u> links corresponding to mobile information channels be visible at the mobile web site.  *See* Defendants' Brief at 4.  Instead, the Court explicitly held during the claims construction hearing that links <u>other</u> than those corresponding to the mobile information channels at the mobile web site were within the scope of the patent claims:

```
       [The Court]:          And "corresponding to respective ones of the
    17   predetermined selectable mobile information channels that have
    18   been activated by the users -- by the user" is construed
    19   extrude to mean "the links on the mobile web site match those
    20   mobile information channels that a user has turned on."
    21          Mr. Pitcock?  Do you want to think about that?
    22          MR. PITCOCK:  Well, I don't -- well, I will just say
    23   that--
    24          THE COURT:  You are flabbergasted.
    25          MR. PITCOCK:  No.  As long as that -- well, if by your
     1   construction you are excluding other links, then I'd say it's
     2   contradicted by the intrinsic evidence.
     3          THE COURT:  Well, what links am I excluding?
     4          MR. PITCOCK:  Well, that's what I'm asking.  When you
     5   say -- I don't have any problem with saying there have to be
     6   links on the mobile web site that match the channels that have
     7   been turned on.  That I don't have a problem with, as long as
```

```
     8    by match you don't mean you can't have other links.
     9           THE COURT:  I don't see the claim language speaking to
    10    excluding others.
```

Pitcock Decl., Ex. C, Tr. at 55-56.

The Court's claim construction also clarifies that the "activatable links" at the mobile web site are not part of the mobile information channel, but rather provide access to channels that have been made visible by the user. *See* Pitcock Decl., Exh. C, Tr. at 55:11-15 (defining "activatable links" as "links that users of the mobile web site may employ to access a given mobile information channel."). Thus, there is nothing in the claim language that requires that a user determine which links are visible at the mobile web site. As noted above, the use of the open-ended word "comprising" used to introduce the steps of the method claim means that additional elements or features do not alleviate Defendants' infringement. *See, e.g., Invitrogen Corp,* 327 F.3d at 1368 ("The transition 'comprising' in a method claim indicates that the claim is open-ended and allows for additional steps."); *Genentech,* 112 F.3d at 501 ("Comprising" is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.).

Moreover, when this limitation was discussed during the prosecution of the patent-in-suit, a specific example from the specification was set forth illustrating the claim limitation:

> An example of the recited web page of the mobile web site can be seen in FIG.
> 25a of the drawings, and includes actuatable links 1, 2, 3, 4, . . . that correspond
> to respective ones of the mobile information channels 808 that have been
> activated by the user so as to be visible to visitors to the mobile web site.

Pitcock Decl., Exh. B at p. 317.

Figure 8 (showing example mobile information channels 808 that have been activated) and Figure 25a (showing actuatable links 1, 2, 3, 4, … that correspond to respective ones of the mobile information channels that have been activated by the user) are reproduced below:



Completely contrary to Defendants' arguments, links for mobile information channels 2 (Announcements), 3 (Core), and 4 (Agenda), explicitly identified in the prosecution history quoted above, are displayed in Figure 25a and correspond to channels 808 depicted as "Off" (that is, not "activated") in Figure 8 (*see also* links 6-8 on page 1 and links 1-3 on page 2 for links which correspond to mobile information channel identified in Figure 8 as "Off."). Thus, the prosecution history clarifies that links are "visible" at the mobile web site shown in Fig. 25a for channels that have not been activated. Since the mobile information channels are "predetermined" in claim 1, it is not surprising that there may be links for all the channels, rather than only links for channels activated by the user. *See* Defendants' Brief at 3. Of course, there must be links at the mobile web site to access the content made visible by the activation of mobile information channels.

Nothing in the patent precludes the existence of links that have not been activated by the user. Indeed, Figure 24a (like Figure 25) is described as showing "typical illustrative examples of mobile site screens generated at a mobile device…" '983 Patent, col. 3:3-4. The links on these pages do not have anything to do with the M-channels listed in Figure 8. Indeed, four of the five links in Fig. 24a <u>are not available in the list of channels in Figure 8</u>. Indeed, nothing in the specification indicates, as Defendants argue, that the user determines which links are visible at the mobile web site. As noted above, Figure 25a (which is explicitly linked to activation of channels in Figure 8 in the prosecution history) displays links for <u>all</u> of the mobile channels provided in Figure 8, including for those listed as being in the "off" position.

Thus, all that is required at the mobile web site are links that users of the mobile web site may employ to access a given mobile information channel and links that "match" the mobile information channels that have been made visible, which has been pleaded in detail by Plaintiff. Dkt. No. 54 at ¶¶ 26-27 and 41-42.

Even assuming *arguendo* that making the links visible at the mobile web site were a requirement of the claims, Plaintiff has pleaded that such links are, in fact, made "visible" based on acts by the user. Dkt. No. 54 at ¶ 13. As would be logical, no links are visible at mobile web sites for a user until the user signs up for the service. *Id.* at ¶¶ 13 and 30. Even after sign up, Facebook users can make the link for the "Wall" (along with the other content) visible and not visible. *Id.* at ¶ 22. Thus, the Plaintiff has in fact met the pleading requirements for claim 1, even if the Defendants' arguments on the interpretation of the claims were adopted by the Court. While more detail could obviously be added, given the Court's explicit holding that other links were not excluded at the mobile web site, such detail was unnecessary at the pleading stage.

### C.  Plaintiff Has Adequately Pleaded Direct Infringement, Thus Defendants' Motion to Dismiss on the Pleadings Plaintiff's Claim For Indirect Infringement Fails

The Defendants' sole argument for dismissing Plaintiff's claims for indirect infringement rests on Plaintiff's alleged failure to adequately plead a claim for direct infringement.  Defendants' Brief at 19.  Since Plaintiff has in fact adequately pleaded its direct claims for patent infringement, as noted above, Defendants' motion to dismiss Plaintiff's claims for indirect infringement must also fail.

## VI.   Plaintiff's Cross-Motion for Judgment on the Pleadings On Defendants' Counterclaims For Declaratory Judgment and Defense of Invalidity

Pursuant to Federal Rules of Civil Procedure 12(c) ("Rule"), Plaintiff Wireless Ink Corp. ("Wireless Ink") files this cross motion for judgment on the pleadings regarding the Defendants' counterclaims for a declaratory judgment and defense of invalidity.

### A.  The Patent and Trademark Office Has Soundly Rejected Defendants' Invalidity Arguments

Wireless Ink requested the identification of all relevant prior art from the Defendants via interrogatories served on August 19, 2010.  The Defendants sought to evade response by seeking a stay of discovery on their own counterclaims.  On September 9, 2010, discovery was stayed in this case (except strictly related to claims construction) pending a claims construction ruling.  *See* Dkt. No. 36.

The Court ruled on claims construction on October 21, 2010 and twice confirmed that there was no longer any stay of discovery on November 2, 2010 (*see* Dkt. No. 47) and again on November 4, 2010 (*see* Dkt. No. 48). Shortly thereafter, Plaintiff requested responses to its long-ago served interrogatories.

On November 22, 2010, both Defendants served objections to the interrogatories without identifying any further prior art. Plaintiff demanded substantive responses.  During a face-to-face

meet and confer on discovery issues on December 3, 2010 (held pursuant to the Court's Order of November 18, 2010), the Defendants finally agreed to produce all known relevant art.

On December 14, 2010, the Defendants (through counsel for Google, Inc.) produced 1209 pages of prior art as individual .TIFF files.  Plaintiff requested production of the prior art as .pdf files, which is the only format acceptable to the Patent and Trademark Office.  One week later, right before the holidays on December 21, 2010, the Defendants produced the prior art files in .pdf format.

Plaintiff's patent application no. 12/548,928 is currently pending before the Patent and Trademark Office and claims priority to the patent-in-suit. The application is published and available publicly on the web site for the Patent and Trademark Office. The pending application has claims similar to those involved in the current litigation, including the following first claim:

> 1. A method for managing information content in a network-based communication system, the method comprising the steps of:
> providing a content management web site identified by a first uniform resource locator and accessible to a user of the communication system, the content management web site being configured to permit the user to designate at least one data source that is external to the content management web site; and
> generating a mobile web site identified by a second uniform resource locator different than the first uniform resource locator, the mobile web site being accessible independently of the content management web site via one or more mobile devices, the mobile web site being configured to receive data automatically from the external data source designated by the user at the content management web site.

On January 6, 2011, all prior art references identified by the Defendants were submitted to the Patent and Trademark Office by patent prosecution counsel via an Information Disclosure Statement.  The claims of the continuation patent application were allowed (found patentable) by the Examiner on January 10, 2011, less than a week after submission of those references.  Thus, the 1200+ pages of prior art produced by the Defendants in this case were not sufficient to merit a rejection by the Examiner with respect to the claims in the pending application, and were obviously

not deemed to be any more relevant than the prior art already considered by the Patent and Trademark Office during the prosecution of the patent-in-suit. The claims in the application are expected to issue shortly.

### B.  Defendants Do Not Plead A Plausible Claim for Patent Invalidity

A pleading requires "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940 (2009) (citing *Twombly*, 550 U.S. at 556).  A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 1940.

Counterclaims, like claims, are subject to the pleading requirements of Rule 8.  *Management Assistance, Inc. v. Edelman*, 584 F. Supp. 1016, 1020 (S.D.N.Y. 1984).  The Second Circuit has also held that "[a]ffirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy."  *Shechter v. Comptroller of New York*, 79 F.3d 265, 270 (2d Cir. 1996) (citations omitted).  "Mere conclusory assertions are not sufficient to give plaintiffs notice of the counterclaims and defenses and, thus, do not meet Rule 8(a)'s pleading standards."  *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 623 (S.D.N.Y. 2008).

Instead of pleading facts to support a plausible claim or defense that the patent-in-suit is invalid, the Defendants' pleadings are nothing "more than labels and conclusions and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555, 557.  Moreover, a patent is presumed valid and the defendant bears the burden of proving invalidity by clear and convincing evidence.  *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir.

1984).  Where the prior art has been considered, and then rejected, by the Patent and Trademark Office in a continuation patent application with similar claims, the Defendants should have to do something more than merely assert that the patent-in-suit is invalid. *See Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1051 (N.D. Cal. 2004) (holding that defendant eHelp, by alleging several grounds for invalidating and voiding the '411 patent, does not provide Qarbon with a basis for assessing the strength of eHelp's counterclaim. Because the invalidity counterclaim did not provide "a more specific statement of the basis" of the counterclaim, the Court granted Qarbon's motion to dismiss eHelp's counterclaim for a declaratory judgment).

The Defendants seek to dismiss Plaintiff's detailed Second Amended Complaint without the benefit of any discovery, yet seek to impose enormous costs on the Plaintiff without plausibly pleading that the patent-in-suit is invalid.  For example, Defendants have already claimed the need to seek third party discovery in Europe and have argued for a lengthy fact discovery period based on patent invalidity.  This is exactly the abuse *Iqbal* and *Twombly* were supposed to prevent, and Defendants' pleadings on invalidity pursuant to Rule 12(c) should be dismissed.

**VII.   Conclusion**

For all the reasons set forth in this brief, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint should be denied.

Dated: January 28, 2011

Respectfully submitted,                                 Of Counsel:

                                                        **STEVENS LAW GROUP**
/s/ Jeremy S. Pitcock                                   David R. Stevens (admitted *pro hac vice)*
Jeremy S. Pitcock (JP-4954)                             1754 Technology Drive, Suite 226
**THE PITCOCK LAW GROUP**                               San Jose, California 95110
1501 Broadway, 12th Floor                               (408) 288-7588
 New York, NY 10036
(646) 571-2237

                                                        **BANIE & ISHIMOTO LLP**
                                                        Jennifer L. Ishimoto (admitted *pro hac vice*)
                                                        600 Chesapeake Drive
**Attorneys for**                                       Redwood City, CA 94063
**Wireless Ink Corporation**                            (650) 549-5660

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on January 28, 2011, a true and correct copy of the foregoing **PLAINTIFF WIRELESS INK CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND PLAINTIFF'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS ON DEFENDANTS' COUNTERCLAIM FOR A DECLARATORY JUDGMENT AND DEFENSE OF INVALIDITY** has been served on registered counsel of record via the Court's ECF system.

Dated: January 28, 2011                    <u>/s/Jeremy S. Pitcock</u>
                                                          Jeremy S. Pitcock